## AGREEMENT AND GENERAL RELEASE

This Agreement and General Release (the "Agreement"), is entered into between Gregorio Romero ("Employee") and 612 Ocean Avenue Partners ("Employer").

**WHEREAS,** Employee and Employer have agreed to fully and finally resolve all matters between them in accordance with and pursuant to the terms and conditions set forth herein;

**NOW THEREFORE,** in consideration of the mutual promises and covenants contained herein, it is agreed as follows:

1.  <u>Definitions.</u>

    1.1.  The "<u>Action</u>" means the legal action commenced by Employee against Employer, and other individually named defendants, indexed as follows: Romero v. 612 Ocean Avenue Partners, LLC, et al., EDNY 17-CV-545.

    1.2.  "<u>Claims</u>" means claims, charges, complaints, liabilities, obligations, promises, agreements, damages, actions and expenses (including attorney's fees and costs) of any nature whatsoever, known or unknown, including, without limitation, claims relating to Employee's employment or the termination of Employee's employment; claims arising from Employee's employment agreement with Employer, claims based in contract, tort, constitutional, statutory or common law, and claims under any federal, state, or local statute, order, law or regulation, governing terms or conditions of employment, including but not limited to wages, benefits or discrimination in employment on the basis of any protected characteristic under the New York State Human Rights Law, New York City Human Rights Law, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Age Discrimination in Employment Act, Genetic Information Nondiscrimination Act of 2008, Uniformed Services Employment and Reemployment Rights Act, the Employee Retirement Income Security Act (excluding any claims for accrued, vested benefits), COBRA, the Family and Medical Leave Act, the Fair Labor Standards Act, New York State Labor Law, New York City Labor Law, including claims for wrongful discharge, breach of express or implied contract, breach of an implied covenant of good faith and fair dealing, violation of public policy, defamation or misrepresentation, or any claim for attorneys' fees, physical or emotional distress or injuries, punitive damages, compensatory damages, or any other duty or obligation of any kind or description whether arising in law or equity.

    1.3.  "<u>Effective Date</u>" means the date Agreement is fully executed by all parties.

    1.4.  "<u>Parties</u>" means Employee and Employer.

    1.5.  "<u>Person</u>" means natural persons (including individuals employed by Employers), corporations, partnerships, sole proprietorships, unions, associations, federations or any other kind of entity.

1.6. "Releasees" means Employer, its current and former successors, assigns, parent, subsidiary and affiliated entities and each of their respective current and former owners, directors, officers, agents, managers, employees, insurers, and attorneys, including, but not limited to all other Persons named in the Action.

2. No Admission of Wrongdoing. This Agreement and compliance with it shall not be construed as an admission by Employer of any liability whatsoever, or of any violation of any statute, duty, contract, right, or order and Employer denies any violation of any statute, duty, contract, right, or order.

3. [Intentionally Omitted].

4. Release.

4.1. In consideration of Employer's promises and undertakings contained in this Agreement, to which Employee is not otherwise entitled, Employee releases and forever discharges Releasees from, or in respect of, all Claims which Employee now has or may have against Employer and/or any of the Releasees jointly, severally or singly, both personally and in their official capacity, from the beginning of time to the Effective Date of this Agreement ("Released Claims"). This release does not apply to claims for benefits under the New York Workers' Compensation Law.

4.2. For avoidance of doubt, Employee asserted claims against Employers in the Action that do not arise under the Fair Labor Standards Act ("Non-FLSA Claims"). The release provided in this Paragraph is given in exchange for payments made in resolution of Non-FLSA Claims, as set forth further in this Agreement.

4.3. Employer hereby waives and forever discharge Plaintiff from any and all claims, charges, grievances, levies, complaints, averments, demands, causes of action, attorneys' fees and liabilities of any kind whatsoever upon any legal or equitable theory, whether contractual, common law, statutory, regulatory (under federal, state or local laws, rules, regulations, principles or otherwise), whether known or unknown, asserted or unasserted, suspected or unsuspected, that Employer ever had, now has or hereafter may have against Plaintiff by reason of any act, omission, transaction, agreement or occurrence up to and including the date of the execution of this Agreement.

5. Covenant Not to Sue.

5.1. In consideration of Employer's undertakings in this Agreement, Employee, individually and on behalf of Employee's heirs, executors, administrators, agents and assigns, promises not to sue Employer or the other Releasees both in their individual and respective capacities, concerning any Released Claim.

5.2. Employee represents that Employee has no pending claims, in any forum, against Releasees concerning any Released Claims. Employee agrees that if any court, tribunal, or administrative agency of competent jurisdiction assumes or has assumed jurisdiction over any such claims, Employee will promptly

request in writing that the court, tribunal or administrative agency withdraw the matter with prejudice.

6.   <u>Limitations on the Release.</u>  For the avoidance of doubt, the General Release and Covenant Not to Sue in this Agreement are limited by the following:

6.1.   Nothing in Agreement is intended to, or shall, release the Parties from their obligations under this Agreement.

6.2.   Nothing contained in this Agreement is intended to, or shall, interfere with Employee's rights under federal, state, or local civil rights or employment discrimination laws (including, but not limited to, Title VII, the ADA, the ADEA, GINA, USERRA, or their state or local counterparts) to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of this Agreement. Employee shall not, however, be entitled to any relief, recovery, or monies in connection with any such claims brought against Employer and/or any of the Releasees, regardless of who filed or initiated any such complaint, charge, or proceeding.

7.   <u>FLSA Claims.</u>  Employee acknowledges and agrees that (a) certain payments made under this Agreement, as set forth herein, are in resolution of claims asserted under the Fair Labor Standards Act; (b) there exist *bona fide* disputes as to Employee's FLSA claims; and (c) this Agreement provides a fair and reasonable settlement of Employee's FLSA claims.

8.   <u>Payment.</u>

8.1.   As good consideration for Employee's promises and undertakings under this Agreement, Employer agree to pay Employee a gross Settlement Sum of $99,000.00, allocated evenly between Employee's FLSA Claims and Non-FLSA claims.

8.2.   Payment shall be made in the following form: (a) $33,000.00 shall be payable by check as fees and costs to Employee's counsel Michael Faillace & Associates; (b) $13,000.00 shall be allocated toward back rent owed by Employee to Employers, after application of which Employer releases and discharge all claims for back rent, late and legal fees through the Effective Date of this Agreement; and (c) $53,000.00 shall be payable by check to Employee.

8.3.   Payment shall be delivered as follows: (a) simultaneous with the execution and delivery of this Agreement, Employer shall deliver post-dated checks (three checks in the amount of $17,666.66 each, to Employee and three checks in the amount of $11,000.00 each, to Employee's counsel) to be held in escrow by Employer's counsel, with copies sent to Employee's counsel; (b) Employer's counsel shall release payment to Employee's counsel in three equal monthly installments of $17,666.66 to Employee and 11,000.00 to Employee's counsel; (c) the first installment shall be made immediately upon judicial approval of this Agreement; and (d) the remaining installments shall be made monthly thereafter.

3

8.4. The back rent allocated in Paragraph 8.2(b) shall be the only back rent due to releasees as of the effective date of this agreement. If Employer or Employer's counsel fail to timely deliver the payments as specified in Paragraph 8.3, Employee's counsel shall provide notice of default to Employer's counsel at ajrobb@cbdm.com. Employer shall have five (5) days to cure from the date of notice, following which Employee's rent shall abate on a per diem basis until payment is made.

8.5. Payment shall be reported by Employer on IRS Form 1099 to Employee and Employee's counsel respectively.

8.6. Employer's payment obligation under this Agreement shall be fully satisfied upon delivery of payment to Employer's counsel. Employer shall bear no responsibility for further distribution of the settlement sums.

8.7. No salary, severance pay, benefits, vacation pay, sick pay or other payments or additional monies beyond the sums identified as the Settlement Sum in this Paragraph will be made by Employer to Employee and the Parties agree that no salary, benefits, or other payments beyond the Settlement Sum are owing by Employer to Employee.

9. Tax Liability. Employee shall be solely responsible for paying any federal, state or local taxes which may be due from Employee as a result of the payments made pursuant to this Agreement. Employee shall indemnify and hold Employers harmless against any and all tax liabilities, claims, damages, and costs, including reasonable attorneys' fees, that Employers may incur as a result of (1) Employee's failure to pay taxes, or (2) any administrative or judicial determination that part or all of the gross Settlement Sum set forth in this Agreement constitutes reportable wages or income.

10. Termination of Action. The parties agree to work cooperatively to effectuate all steps necessary to terminate the Action and any other pending litigation between them, including submission of this Agreement for judicial approval and filing of a stipulation of dismissal and/or request for dismissal.

11. THE RETAINING OF JURISDICTION BY THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK IS A MATERIAL TERM OF THIS AGREEMENT. IF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK CHOOSES TO NOT RETAIN JURISDICTION THEN THIS AGREEMENT IS NULL AND VOID.

12. Remedies for a Breach of this Agreement/Arbitration: Any claim arising from or relating to a breach of this Agreement shall be resolved by binding arbitration administered by the American Arbitration Association under its Employment Rules and Mediation Procedures. If either party commences an action in any forum against any party concerning a Released Claim, then the prevailing party shall be entitled to its and/or their reasonable attorney's fees and costs incurred in litigating such a claim. This paragraph does not override the terms of Paragraph 11 of

this agreement, and the parties may seek reinstatement of this case or remedies of enforcement through the Federal Court.

13.    Non Retaliation: It is expressly acknowledged by Employer and Releasees that no acts of retaliation prohibited by law shall be taken against Employee.

14.    [Intentionally Omitted].

15.    No Disparagement.  In consideration of promises and undertakings contained in this Agreement, the Parties agree to refrain from engaging in or soliciting any of the following: (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill or standing in the community of the other Party and/or those of the other Releasees, and (2) referring to or in any way commenting on the other party and/or any of the other Releasees in or through the general media or any public domain (including without limitation, internet websites, social media applications or any other electronic media), in a way that would materially damage, the reputation, goodwill or standing in the community of the other party and/or any of the other Releasor or Releasees.

16.    _[Intentionally Omitted.]

17.    [Intentionally Omitted].

18.    Reconocimiento en Español (Spanish Acknowledgment).  El empleado declara que su idioma principal es el español y que el abogado de ese empleado, Michael Faillace & Associates ha revisado todos los términos de este Acuerdo con él en español. El empleado comprende completamente todos los términos de este Acuerdo y los acepta voluntariamente mediante la firma a continuación. (Employee represents that his primary language is Spanish and that Employee's counsel, Michael Faillace & Associates has reviewed all terms of this Agreement with Employee in Spanish.  Employee fully understands all terms of this Agreement and voluntarily accepts them by signing below.)

19.    Controlling Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of conflict of laws.

20.    Full Agreement; No Implied Modification.  This Agreement contains the full and complete understanding between the parties hereto and supersedes all prior understandings, whether written or oral pertaining to the subject matter hereof. This Agreement may not be amended or modified otherwise than by written agreement executed by Employee and by a duly authorized representative of Employer.

21.    Partial Invalidity does not Affect the Rest of the Agreement.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

22.    Non-Enforcement is not a Waiver.  The failure of either party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right either party

5

may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

23.    Execution in Counter-Parts. This Agreement may be executed in counterpart by each party. Facsimile or electronically signed and/or transmitted counterparts will be considered one and the same instrument, and each executed Agreement, when taken together, shall constitute a complete Agreement.

24.    Acknowledgements by Employee. By signing this Agreement, Employee acknowledges that Employee:

24.1.    Has carefully read, and understands, this Agreement;

24.2.    Has been given a reasonable time to consider Employee's rights and obligations under this Agreement and has consulted with an attorney and/or any other advisors of Employee's choice or has voluntarily chosen not to do so;

24.3.    Was advised to consult with an attorney of Employee's choice at the time this Agreement was given to Employee;

24.4.    Understands that this Agreement is legally binding and by signing it Employee gives up certain rights;

24.5.    Understands that this Agreement releases claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq.;

24.6.    Has voluntarily chosen to enter into this Agreement and has not been forced or pressured in any way to sign it;

24.7.    Has not relied upon any representation, statement or omission made by any of Employer or the other Releasees, or by Employer or the other Releasees' agents, attorneys or representatives with regard to the subject matter, basis or effect of this Agreement or otherwise, other than those expressly stated in this Agreement;

25.    Headings. The headings are not part of the provisions hereof and shall have no force or effect and are provided for the convenience of the parties only; they shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.

26. Signatories' Representations. The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

Agreed to and accepted on this date: _____

6

*Gregorio Romero*

Gregorio Romero

Agreed to and accepted on this date: 8 / 27 / 19

612 Ocean Avenue Partners, LLC

By:

Title:

7

_Gregorio Romero_
Gregorio Romero

Agreed to and accepted on this date: 8 / 27 / 19

612 Ocean Avenue Partners, LLC
By: Leon Goldenberg
Title: Member

7